STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & COUNSUMER DOCKET
DOCKET NO. BCD-CV-18-33

LEXX HEALTHCARE, LLC                )
                                     )
            Plaintiff,               )     ORDER ON COUNTERCLAIM
                                     )     DEFENDANT'S MOTION TO DISMISS
      v.                             )     COUNT I, COUNT II, COUNT III,
                                     )     COUNT IV, AND COUNT V OF
EASTERN MAINE HEALTHCARE             )     COUNTERCLAIM
SYSTEMS, et al.,                     )
                                     )
            Defendants.

Pending before the Court is Counterclaim-Defendant Lexx Healthcare, LLC's ("Lexx")

motion to dismiss all counts of Counterclaim-Plaintiffs Eastern Maine Healthcare Systems and

Eastern Maine Medical Center's (collectively "EMHS") Counterclaim. Pursuant to its

discretionary authority under M.R. Civ. P. 7(b)(7), the Court has opted to decide the motion

without holding oral argument.

## BACKGROUND

On April 23, 2018, Lexx filed its three-count Complaint against EMHS, alleging that

EMHS had breached its contract with Lexx, and seeking damages for that breach, as well as

pleading claims in the alternative for recovery pursuant to equitable theories. EMHS denied the

material allegations in its answer to the Complaint and filed its five-count Counterclaim against

Lexx alleging breach of contract (Count I), negligence (Count II), negligent misrepresentation

(Count III), intentional misrepresentation (Count IV), and breach of fiduciary duty (Count V).

Lexx has moved to dismiss all five counts on the grounds that they fail to state a claim for which

this Court may grant relief. *See* M.R. Civ. P. 12(b)(6).

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the

complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* "The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law" and thus subject to de novo appellate review. *Marshall v. Town of Dexter*, 2015 ME 135, ¶ 2, 125 A.3d 1141.

## DISCUSSION

### Count I: Breach of Contract

EMHS's first counterclaim count alleged against Lexx is for breach of contract. Lexx argues that this count must be dismissed because EMHS has not—and cannot—allege that Lexx breached a material term of any contract between the parties. (Mot. Dismiss 5-7.) Lexx's argument relies on Exhibit A, attached to its motion, which it purports to be a copy of the written agreement between the parties. (*See* Mot. Dismiss 4.) EMHS responds that the Court cannot consider Exhibit A on a motion to dismiss, and that in any event Exhibit A does not conclusively preclude EMHS's breach of contract claim. (Opp'n Mot. Dismiss 2-8.)

The threshold issue is therefore whether the Court may consider Exhibit A in deciding the instant motion. "The general rule is that only the facts alleged in the complaint may be considered on a motion to dismiss and must be assumed as true." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43. If "the court considers appropriate materials outside the pleadings, the motion is treated as one for a summary judgment." *Id.* (citation omitted); *see also* M.R. Civ. P. 12(b). However, "official public documents, documents that are central to the plaintiff's claim, and

2

documents referred to in the complaint may be properly considered on a motion to dismiss without converting the motion to one for a summary judgment when the authenticity of such documents is not challenged." *Id.* ¶ 11.

Exhibit A is attached to Lexx's Complaint in this matter, but not to EMHS's Counterclaim. EMHS denies that Exhibit A is an authentic copy of the written agreement between the parties. (Opp'n Mot. Dismiss 3, n.1; Def's Ans. ¶ 7.) However, EMHS nonetheless vigorously argues over the course of five pages in its opposition memorandum that even if considered, Exhibit A does not conclusively preclude EMHS's breach of contract claim. (Opp'n Mot. Dismiss 2-8.)

In *Moody*, our Law Court adopted the reasoning of *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993) in announcing the so-called "Moody exception" to general rule. *See Moody*, 2004 ME 20, ¶¶ 8-11, 843 A.2d 43. As explained by the Law Court:

> The Third Circuit explained [in *Pension Benefit Guar. Corp.*, 998 F.2d at 1196] that the reason for the rule regarding converting motions to dismiss to motions for a summary judgment is to afford a plaintiff an opportunity to respond to new facts raised by the defendant. *Id.* If a document is referenced in the complaint, is central to a plaintiff's claim, or is a public document, the plaintiff should have notice of the contents. *See id.* at 1196-97.

*Moody*, 2004 ME 20, ¶ 11, 843 A.2d 43. Applied to this case, there is no concern that EMHS—as counterclaim-plaintiff—lacks "notice of the contents" of Exhibit A, having been put on notice when Lexx attached the exhibit to its Complaint. Thus, Lexx—as counterclaim-defendant—is not raising "new facts." *See id.* EMHS has a fair "opportunity to respond" to the contents of Exhibit A, as demonstrated by pages three through eight of its opposition memorandum. The Court therefore concludes that Exhibit A, hereafter referred to as the

3

"Agreement," is properly before the Court in considering the instant motion.

The elements of a breach of contract claim include (1) breach of a material contract term, (2) causation, and (3) damages. *Me. Energ. Recov. Co. v. U.S. Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248. Whether a contract is ambiguous is a question of law. *Lee v. Scotia Prince Cruises, Ltd.*, 2003 ME 78, ¶ 9, 828 A.2d 210. The proper interpretation of an ambiguous contract is a question of fact, whereas the interpretation of an unambiguous contract presents a question of law. *Id.* Ambiguous contract language is language that is reasonably susceptible to different interpretations. *Id.*

In their Counterclaim, EMHS alleges that pursuant to their contract with Lexx: (1) Lexx was obligated to furnish physicians who would not abuse patients and were properly enrolled with the Centers for Medicare and Medicaid Services ("CMS"); (2) that Lexx furnished a doctor who abused EMHS's patients and was not properly enrolled with CMS, thereby breaching Lexx's contractual obligation; and (3) that EMHS has suffered economic harm as a result of that breach. (Def's Countercl. ¶¶ 16-21.) Lexx claims that pursuant to sections 6.6, 6.2, and 6.5 of the Agreement, EMHS is responsible for "verifying Physician credentials and for granting staff privileges to Physicians"; "billing, collecting, and retaining all professional fees for Clinical Services rendered by" the physician; and "providing services necessary to the delivery of Clinical Services, including administrative;" respectively. Lexx further points out that pursuant to section 1.2 of the Agreement EMHS "has the exclusive right to reject any Physician presented" by Lexx. (Mot. Dismiss 5-7.) Lexx argues that these provisions unambiguously demonstrate that Lexx had no obligation to furnish physicians who would not abuse patients and were properly enrolled with CMS because pursuant to these provisions EMHS would be responsible for ensuring that the physicians would not abuse patients and were enrolled with CMS.

4

EMHS counters that these provisions are ambiguous at best as to whether Lexx had a contractual responsibility to supply EMHS with physicians who were registered with CMS and who would not abuse patients. EMHS points out that none of these provisions even reference CMS, requiring an inference in Lexx's favor that EMHS should have or did know that CMS enrollment was part of EMHS's obligations to verify physician credentials, collect professional fees, or provide administrative services. (Opp'n Mot. Dismiss 4-5.) EMHS points out that when read in their entirety, the sections from the Agreement cited by Lexx would not support the inference, even if it were proper for the Court to draw inferences in the defendant's favor on a motion to dismiss. Finally, EMHS points to other sections of the Agreement that could give rise to an obligation on Lexx's part to furnish physicians who would not abuse patients and who were properly enrolled with CMS, specifically sections 1.1 2, 4, and 5.1.

When a motion to dismiss is grounded on a failure to state a claim upon which relief can be granted, all favorable inferences are made in favor of the plaintiff. *See Tomer v. Me. Human Rights Comm'n*, 2008 ME 190, ¶ 9, 962 A.2d 335. In order to dismiss EMHS's counterclaim count for breach of contract on the grounds urged by Lexx, the Court would need to do exactly the opposite, and draw the inference that the selective quotations from sections 6.6, 6.2, and 6.5 of the Agreement cited by Lexx unambiguously provide that it is EMHS, not Lexx, who is responsible for ensuring that physicians would not abuse patients and were properly enrolled with CMS.

In essence, Lexx's argument depends on the Court concluding that the factual allegations in paragraphs sixteen through twenty-one of EMHS's Counterclaim are inconsistent with the unambiguous terms of the Agreement, thereby abrogating the general rule that when considering a motion to dismiss brought under M.R. Civ. P. 12(b)(6), courts "consider the facts in the complaint as if they were admitted." *Bonney*, 2011 ME 46, ¶ 16, 17 A.3d 123. However, drawing all

5

reasonable inferences in favor of EMHS, there is no inconsistency between the facts alleged and the parties' responsibilities under the Agreement. In order to recover, EMHS will need to prove by a preponderance of the evidence that the Agreement required Lexx to furnish CMS-enrolled and non-abusive physicians notwithstanding the fact that neither requirement is expressly provided for in the Agreement. But at this point is has alleged that there were such obligations and that is sufficient under Maine's pleading rules. *See* M.R. Civ. P. 8(a).

### Count II: Negligence

Lexx next argues that EMHS's counterclaim count alleging negligence fails to state a claim by operation of the "economic loss doctrine." (Mot. Dismiss 7-9.) EMHS counters that Lexx misapprehends the economic loss doctrine and that in any event EMHS is permitted to plead claims in the alternative even if it could not ultimately recover damages pursuant to both breach of contract and negligence for the same conduct. (Opp'n Mot. Dismiss 8-13.)

The economic loss doctrine is stated very narrowly under Maine law, and has only been applied by our Law Court to preclude tort recovery for a defective product's damage to itself. *Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors*, 659 A.2d 267, 270 (Me. 1995); *see also id.*, 659 A.2d at 270 n.4. The U.S. District Court for the District of Maine has, in dicta, suggested that "the Law Court's reasoning in *Peachtree* extends beyond purchases of property to service contracts as well." *See Me. Rubber Int'l v. Envtl. Mgmt. Grp., Inc.*, 298 F. Supp. 2d 133, 136 (D. Me. 2004). The Maine Superior Court has, in at least two cases, applied the economic loss doctrine to bar negligence claims arising out of service contracts. *See Twin Town Homes, Inc. v. Molley*, No. CV-01-298, 2002 Me. Super LEXIS 209, *8 (Nov. 14, 2002); *Bayreuther v. Gardner*, No. CV-99-352, 2000 Me. Super. LEXIS 140, *5-6 (June 21, 2000).

The Court need not determine whether the economic loss doctrine will ultimately operate

6

to bar EMHS's negligence claim because such a conclusion would be premature. As noted above, there have been no conclusions or findings as to whether the Agreement obligated Lexx to provide CMS-enrolled, non-abusive physicians, whether Lexx breached that obligation, and whether the breach resulted in damages—only allegations. While generally "tort *recovery* must be based on actions that are separate from the actual breach of contract[,]" there is no such requirement for pleadings. *Cf. Stull v. First Am. Title Ins. Co.*, 2000 ME 21, ¶ 14, 745 A.2d 975 (emphasis added).

Indeed, the Report's Note of 1959 to M.R. Civ. P. 8 provides that "Rule 8(e)(2) permits pleading in the alternative or in hypothetical form." *See also June Roberts Agency v. Venture Props.*, 676 A.2d 46, 49 n.1 (Me. 1996) (plaintiff "is not precluded from pleading" legally inconsistent theories); *State v. Dodge*, 397 A.2d 588, 591 (Me. 1979) ("[M.R. Civ. P. 8(e)(2) permits alternative pleading"). The cases cited by Lexx applying the economic loss doctrine were all decided on summary judgment or after trial; no Maine court has *dismissed* a claim for negligence based on the economic loss doctrine.

EMHS alleges that Lexx had a duty to furnish providers who would provide care without abusing patients and were properly enrolled with CMS, that Lexx breached its duty of care because it knows or should have known a furnished doctor posed an unreasonable threat to patients and was not properly enrolled with CMS, and that EMHS suffered damage as a result of that breach. (Pl's Countercl. ¶¶ 23-27.) Taken as true, this states a claim for negligence. *See Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18.

### Count III and Count IV: Negligent Misrepresentation and Intentional Misrepresentation

Lexx's principal argument for the dismissal of EMHS's claims for negligent misrepresentation and intentional misrepresentation is that the Counterclaim fails to allege that Lexx supplied false information or made a false representation. (Mot. Dismiss 9, 11.) EMHS

7

counters that its Counterclaim supports the reasonable—even "obvious"—inference that the statements set forth in paragraphs six through eight were false, *i.e.* misrepresentations. (Opp'n Mot. Dismiss 13-14; *see* Def's Countercl. ¶¶ 6-8, 29-33, 35.)

A necessary element to the cause of action of negligent misrepresentation is that the defendant "suppli[ed] false information for the guidance of others in their business transactions[.]" *St. Louis v. Wilkinson Law Offices, P.C.*, 2012 ME 116, ¶ 18, 55 A.3d 443. That the defendant made "a false representation" is likewise a necessary element to the cause of action of intentional misrepresentation.[1] *Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 9, 832 A.2d 771. As a general principal, EMHS is correct that all reasonable inferences must be drawn in favor of the plaintiff when deciding a motion to dismiss for failure to state a claim. *See Tomer*, 2008 ME 190, ¶ 9, 962 A.2d 335. However, "averments of fraud" are subject to a heightened pleading standard, and "the circumstances constituting fraud . . . shall be stated with particularity." M.R. Civ. P. 9(b); *see also Barnes v. McGough*, 623 A.2d 144, 146 (Me. 1993) ("[B]ecause the plaintiffs have alleged that the defendants' conduct involved fraud, the provisions of M.R. Civ. P. 9(b) must also be considered in addressing the motion to dismiss."). Applying the identical equivalent Fed. R. Civ. P. 9(b) to substantive Maine law of negligent misrepresentation and intentional misrepresentation, the U.S. District Court for the District of Maine has concluded that federal Rule 9(b)'s stricter pleading standards apply to the latter but not the former. *Enercon v. Glob. Comput. Supplies, Inc.*, 675 F. Supp. 2d 188, 197 (D. Me. 2009) (interpreting federal rules, *see id.*, n.8); *accord Hayes v. Iworx*, No. CV-06-168, 2006 Me. Super. LEXIS 162, *12 (July 31, 2006) (applying Maine rules).

---

[1] The causes of action referred to as "intentional misrepresentation" and "fraud" are "variants" of the same tort, and are treated the same. *Drilling & Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶ 17, 147 A.3d 824; *see also Arundel Valley, LLC v. Branch River Plastics, Inc.*, BCD-CV-13-15, 2014 Me. Bus. & Consumer LEXIS 12, *19-20 (Bus. & Consumer Ct. Nov. 5, 2014, *Horton*, J.) ("In Maine, fraudulent misrepresentation and intentional misrepresentation have been treated as the same tort.") (citation omitted).

8

Both causes of action, as pled in the Counterclaim, cross-reference paragraphs six through eight of the Counterclaim, which allege that Lexx:

6. . . . represented that it had long (i.e., "decades") experience in providing locum tenens services to hospitals and healthcare entities.

7. . . . further represented that it had forged unsurpassed relationships with top-notch physicians across all specialties, nationwide.

8. . . . further represented that it knows the physicians it engages intimately, on a personal level.

(Def's Countercl. ¶¶ 6-8.) As to the negligent misrepresentation claim, EMHS further alleges that Lexx "failed to exercise reasonable care or competence in obtaining and/or communicating the information." (Def's Countercl. ¶ 32.) As to intentional misrepresentation, EMHS further alleges that "[t]he misrepresentations of fact made by [Lexx] as set forth in paragraphs 6 through 8 . . . were made with the intention of securing a contract to provide services to" EMHS. (Def's Countercl. ¶ 35.) There are no further allegations as to the circumstances constituting fraud.

Based on the persuasive authority of the Maine Superior Court and the U.S. District Court for the District of Maine, this Court follows the rule that M.R. Civ. P. 9(b)'s heightened pleading requirement applies to Count IV, but not Count III, of EMHS's Counterclaim. As such, Count III adequately states a claim for negligent misrepresentation. As pled, this count "give[s] 'fair notice of the cause of action' by providing 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 16, 19 A.3d 823 (quoting M.R. Civ. P. 8(a)(1)). To the extent the Counterclaim lacks an explicit allegation that the representations in paragraphs six through eight of the Counterclaim were false, the inference can be reasonably drawn that EMHS alleges as such and Lexx is on "fair notice" that this is what EMHS intends to prove to prevail in its claim.

9

However, under the stricter standard mandated by M.R. Civ. P. 9(b), these same allegations are insufficient to state a claim for intentional misrepresentation. Merely characterizing the statements attributed to Lexx as "misrepresentations" is not enough; EMHS must state with particularity the circumstances constituting the fraud. M.R. Civ. P. 9(b); *see also* 2 Harvey & Merritt, *Maine Civil Practice* § 9:2 at 384 (3d, 2011 ed.) ("The misrepresentation itself, including its materiality, the reliance thereon and the damages resulting therefrom, must be set forth with particularity.").

As noted in *Maine Civil Practice*, "[f]ailure to comply with the requirements of Rule 9(b) may ordinarily lead to a dismissal under 12(b) for failure to state a claim[.]" *Id.* However, "[i]f dismissal is granted, it would presumably be with leave to amend." *Id.*; *see* M.R. Civ. P. 15(a). The Court believes that the presumption should apply in this case, and dismisses Count IV without prejudice.

### Count V: Breach of Fiduciary Duty

Lexx's argument for dismissal of EMHS's Counterclaim Count V—breach of fiduciary duty—echoes its argument for dismissal of the misrepresentation claims: that EMHS has failed to allege specific facts constituting the alleged fiduciary relationship with sufficient particularity. (Mot. Dismiss 11-13.) EMHS responds that its allegations are sufficient, and further argues that through discovery it will obtain evidence demonstrating that EMHS placed its trust and confidence in Lexx and that there was a great disparity of position and influence between the parties. (Opp'n Mot. Dismiss 15-16.)

Like fraud, the existence of a fiduciary relationship must be pled with more specificity than that required by the general "notice pleading" requirements of M.R. Civ. P. 8. "In order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts

10

constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.*, 1999 ME 144, ¶ 21, 738 A.2d 839; *see also* 2 Harvey & Merritt, *Maine Civil Practice* § 9:2 at 383 (3d, 2011 ed.). The elements of a fiduciary relationship are (1) the actual placing of trust and confidence in fact by one party in another and (2) a great disparity of position and influence between the parties. *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 712 (Me. 1993).

In its Counterclaim, EMHS alleges that Lexx "stood in fiduciary relation to [EMHS] in that [Lexx] was in a superior position to ascertain both the fitness of [a particular doctor] to care for patients without abusing them and the status of [that doctor's] enrollment with CMS . . . , [a]s part of the confidential relationship between the parties, [EMHS] relied on [Lexx] to provide physicians who posed no unreasonable risk of harm to patients and were properly enrolled with CMS[,]" and that "[Lexx] breached its fiduciary duty to [EMHS] by placing [a particular doctor] at EMMC when [Lexx] knew or should have known [he] posed an unreasonable risk of harm to patients and was not properly enrolled with CMS." (Def's Countercl. ¶¶ 39-41.) The Court agrees with Lexx that these allegations are too general to state a claim for breach of fiduciary duty under the heightened standard required for pleading that cause of action. There are no specific facts alleged with any particularity from which the Court can determine whether, if true, those facts could give rise to a fiduciary relationship. *See Watchtower Bible*, 1999 ME 144, ¶ 21, 738 A.2d 839. EMHS implicitly concedes this point in its argument in opposition by predicating its argument on "the Court allow[ing] development of the evidence" and then explaining what it believes that evidence will show. However, as stated explicitly in *Watchtower Bible*, if the allegations do not meet the heightened pleading requirements for breach of fiduciary duty, then the claim should be

11

dismissed. However, as with Count IV, this dismissal should be without prejudice in order to allow EMHS an opportunity to file a motion to amend its Counterclaim, should it so choose. *See* 2 Harvey & Merritt, *Maine Civil Practice* § 9:2 at 384 (3d, 2011 ed.).

<u>CONCLUSION</u>

Based on the foregoing it is hereby ORDERED:

Counterclaim-Defendant Lexx Healthcare, LLC's motion to dismiss the Counterclaim is GRANTED in part and DENIED in part as follows:

Counterclaim-Defendant's motion is DENIED as to Count I, Count II, and Count III of the Counterclaim.

Counterclaim-Defendant's motion is GRANTED as to Count IV and Count V of the Counterclaim. Those counts are dismissed without prejudice.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: 10/22/18

M. Michaela Murphy
Justice, Business and Consumer Court

Entered on the Docket: 10/22/18
Copies sent via Mail___ Electronically ✓

12